UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| LERITHEA ROLAN, and LAMOTTCA BROOKS, individually, and on behalf of all others similarly situated, <br><br> Plaintiffs <br><br> v. <br><br> ATLANTIC RICHFIELD COMPANY, E. I. DU PONT DE NEMOURS AND COMPANY, and THE CHEMOURS COMPANY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Jury Trial Demanded |

# CLASS ACTION COMPLAINT

Plaintiffs, LERITHEA ROLAN and LAMOTTCA BROOKS, individually, and on behalf of all others similarly situated, by and through their counsel at ZIMMERMAN LAW OFFICES, P.C. and LEVENFELD PEARLSTEIN, LLC, state and allege as follows:

### Nature of the Action

1. This is a class action brought by and on behalf of more than 1,000 residents, including 680 children, living in the West Calumet Public Housing Complex in East Chicago, Indiana ("West Calumet"). Recent government test results, showing that West Calumet is inundated with massive levels of hazardous lead and arsenic generated by Defendants, have thrown the entire neighborhood into disarray. The Mayor of the City of East Chicago has advised residents to relocate from their homes for their own health and safety. The United States Environmental Protection Agency ("EPA") warns residents to avoid outdoor activities to prevent exposure to lead in soil that is hundreds of times greater than safe residential levels. Plaintiffs seek, among other things, an order requiring Defendants to reimburse Plaintiffs for the costs they

have incurred and will incur in response to the contamination, and to recover compensatory and other damages for their injuries.

## The Plaintiffs

2.      Plaintiff LeRithea Rolan ("Rolan") is a citizen of the State of Indiana and resides in East Chicago, Indiana.  She has lived in the property located at 4905 Gladiola, which is within West Calumet, since April 2008.  Rolan has one child, Christopher Tennie, Jr., age 19, who lives with her.

3.      Plaintiff Lamottca Brooks ("Brooks") is a citizen of the State of Indiana and resides in East Chicago, Indiana.  She has lived in the property located at 310 East 151st Place, which is within West Calumet, since September 2012.  Brooks has six children who live with her:  Brielle Long, 16 years old, Diamond and Krystal Weathers, each 11 years old, NaSear Weathers, 10 years old, Kyndle Wilson, 4 years old, and Kalan Wilson, 2 years old.

## The Defendants

4.      Defendant Atlantic Richfield Company ("ARC") is a corporation organized under the laws of the State of Delaware with its principal place of business in California, and is authorized to do business in the State of Indiana.  Atlantic Richfield Company is a successor to the liability of International Lead Refining Company, International Smelting Company, International Smelting and Refining Company, Anaconda Lead Products Company, Anaconda Copper Mining Company, and The Anaconda Company, all of which are collectively referred to herein as "ARC."

5.      Defendant E.I. du Pont de Nemours and Company ("DuPont") is a corporation organized under the laws of, and with its principal place of business in, the State of Delaware, and is authorized to do business in the State of Indiana.

6. Defendant The Chemours Company ("Chemours") is a corporation organized under the laws of, and with its principal place of business in, the State of Delaware, and is authorized to do business in the State of Indiana. On information and belief, Chemours is a spin-off from DuPont that purports to have taken responsibility for some, or all, of DuPont's environmental liabilities. For purposes of this Complaint, references to "DuPont" include Chemours.

## Jurisdiction and Venue

7. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this case arises under the laws of the United States. The claim in Count I seeks relief under the Comprehensive Environmental Response Compensation and Liability Act of l980, as amended, 42 U.S.C. §§ 9601, *et seq*. ("CERCLA"). This Court also has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from one or more of Defendants, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

8. In addition to 28 U.S.C. § 1332(d), pursuant to 28 U.S.C. § 1367 this Court also has supplemental jurisdiction over the state law claims in Counts II through III, which are so related to the claims in Count I that they form part of the same case or controversy.

9. Pursuant to 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b)(2), venue is proper in this Court because this case arises out of actions which occurred and occur, and pertain to property located, within this judicial district.

**The Release of Hazardous Lead and Arsenic to Plaintiffs' Homes**

10. For many years, ARC owned and operated white lead and zinc oxide manufacturing and metal refining facilities at 151st and McCook Avenue in East Chicago, which is within the Class Area, which includes West Calumet. The Class Area is defined below and is outlined on the maps attached as **Exhibit 1**. ARC's operations include a pulverizing mill, white lead storage area, a chemical laboratory, a machine shop, a zinc oxide experimental unit building and plant, a silver refinery and a zinc refinery. At and from its facility, ARC generated, dumped, spilled, or otherwise released lead and arsenic into the Class Area.

11. DuPont owns, and for many years owned and operated a pesticide lead arsenate production facility at 5215 Kennedy Avenue in East Chicago, which is in close proximity to the Class Area. At and from its facility, DuPont generated, dumped, spilled, or otherwise released lead and arsenic onto its property and into the Class Area.

12. Plaintiffs and others in the Class Area have unwittingly been exposed to dangerous levels of lead and arsenic released from ARC and DuPont through ingestion, inhalation and dermal exposure.

13. EPA classifies East Chicago as an environmental justice community, which means it is a community that historically is an under-represented minority and low-income area burdened with significant environmental challenges. West Calumet is owned by the East Chicago Housing Authority, which received a grant from the United States Department of Housing and Urban Development to construct West Calumet.

14. Starting in December 2014 and continuing into 2015, the EPA sampled soil for lead and arsenic in the front and back yards of all West Calumet residences. In July 2016, for the first time, the EPA informed Plaintiffs and others in the Class Area that it found dangerously

high levels of lead and arsenic in the soil at their homes ("July 2016 EPA Letters"). In a letter dated July 8, 2016, EPA informed Plaintiff Rolan that test results at her residence show: (a) hazardous lead levels far exceeding both EPA's maximum safe soil residential level and the regulatory time-critical lead soil removal action concentration, and (b) hazardous arsenic levels exceeding the maximum safe residential level. EPA's July 8, 2016 letter to Rolan and another of EPA's July 2016 Letters showing massively high levels of hazardous lead and arsenic at West Calumet are attached as **Exhibit 2**. A graph compiled by the City of East Chicago, attached as **Exhibit 3**, shows levels above the regulatory time-critical lead soil removal concentration at nearly every property within the Class Area.

15. According to EPA, lead is highly toxic and exposure can be dangerous, especially for children six or younger, who are particularly at risk when exposed to lead. Even low levels of lead in the blood of children can cause irreversible behavioral problems, learning disabilities and impaired growth. Very high blood levels can cause severe neurological problems such as comas, convulsions and death. *See* https://www.epa.gov/schools-healthy-buildings/lead-concerns-during-renovations-healthy-school-environment.

16. According to EPA, arsenic is a human carcinogen. Exposure to arsenic can cause adverse health effects, such as gastrointestinal harm, irritation of the skin and mucous membranes, negative impacts on the brain and nervous system, and lung, skin, bladder and liver cancer. *See* https://www3.epa.gov/airtoxics/hlthef/arsenic.html

17. After informing Plaintiffs and others in the Class Area of the dangerous lead and arsenic results, in July 2016 EPA officials told some of the residents to keep their windows closed and keep children inside at all times. In a July 2016 flyer ("July 2016 Notice") to West Calumet residents (attached as **Exhibit 4**), EPA directed Plaintiffs and others in the Class Area to

greatly curtail their normal activities to avoid being poisoned. EPA wrote, "[t]o ensure the health and safety of children, the federal Agency for Toxic Substances and Disease Registry, or ATSDR, advises parents to prevent children from playing in dirt or mulch, to wash their children's toys regularly and to wash children's hands after they play outside. All residents should remove shoes before walking into their homes. ATSDR officials also recommend residents in the West Calumet Housing Complex not disturb the mulch or dig or garden in their yards." *See* Exhibit 4. Recognizing the imminent health risks in the Class Area, in its July 2016 Notice, EPA advised that "West Calumet residents may have their children's blood lead levels tested by calling the East Chicago Health Department." *See* Exhibit 4.

### **The Contamination Has Thrown Plaintiffs' Lives into Disarray**

18.     As a result of the July 2016 Notice and other communications by public officials beginning in July 2016, despite the summer weather, Plaintiffs and other residents of the Class Area, including West Calumet's 680 children, are stuck inside their homes while in their neighborhood. Many residents of West Calumet, including Plaintiff Brooks and her children, have scrambled and expended resources to find alternative temporary housing when possible, and are returning to their homes only when absolutely necessary. The entire West Calumet neighborhood, including the playgrounds, which were formally filled with children, now resembles a ghost town.

19.     The lead and arsenic levels pose such a threat that in July 2016, East Chicago Mayor Anthony Copeland sent letters to over 1,000 West Calumet residents telling them to abandon their homes for their own safety ("July 2016 Mayor's Letter"). Mayor Copeland wrote, "[n]ow that we know the levels of lead in the ground in West Calumet Housing Complex, we

6

feel it is in your best interest to relocate your household to safer conditions." *See* Mayor's July 2016 Letter, attached as **Exhibit 5**.

20. The July 2016 notifications by public officials as set forth herein were the first time that Plaintiffs and Class members knew, or should have known, of the dangerous levels of lead and arsenic in the Class Area.

21. Recognizing the imminent health threat to children, in August 2016, authorities closed the Carrie Gosch Elementary School, located within the Class Area. In addition, due to what it termed "Unsafe Environmental Issues of the Property," in July 2016, the East Chicago Housing Authority informed residents that it desired "to demolish [the] 346 units located at the West Calumet Housing Complex." *See* Housing Authority Letter, attached as **Exhibit 6**. Officials have now informed Plaintiffs and others in the Class Area that all West Calumet residents must vacate their homes on or before November 30, 2016, further throwing the lives of Plaintiffs and others in the Class Area into turmoil, causing widespread panic, and requiring many to spend substantial time and resources searching for a new place to live.

22. The releases have disrupted, and continue to disrupt, the lives of Plaintiffs and others in the Class Area on a daily basis, causing considerable stress, aggravation, annoyance, inconvenience and discomfort. Plaintiffs and others in the Class Area have also expended time and money to respond to the releases of lead and arsenic, including, but not limited to, investigating the nature of release and making arrangements for alternative temporary housing and relocations.

23. The lead and arsenic from Defendants has threatened the health of Plaintiffs, their children, and others in the Class Area and exposes them to injury and the fear of future injury,

including increased cancer rate and irreversible health impacts, especially to the young children in the Class Area.

24.     The releases of lead and arsenic from the Defendants' properties to the properties of Plaintiffs and others in the Class Area were a result of Defendants' acts or omissions during their ownership and operations.

### Class Allegations

25.     Plaintiffs bring each of the claims in this action in their own names and on behalf of a class of all persons similarly situated ("the Class"), pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

26.     The Class consists of those persons who currently, or, since being told in July 2016 by EPA of the lead and arsenic levels in their neighborhood, reside(d), on property that has been impacted, or a threat exists that it will be impacted, by lead and arsenic from Defendants' properties in and adjacent to the Class Area. The Class Area is defined generally as bordered: (1) on the north by the northern boundary of the Carrie Gosch Elementary School and a line extending eastward from that boundary to the eastern edge of a north/south utility right of way that runs parallel to McCook Avenue north of East 149th Place; (2) on the east by: (i) the eastern-most edge of a north/south utility right of way that runs parallel to McCook Avenue until East 149th Place, and (ii) McCook Avenue between East 149th Place and 151st Street; (3) on the south by East 151st Street; and (4) on the west by the Indiana Harbor Canal. Maps depicting the Class Area (highlighted in colored pen) are attached as <u>Exhibit 1</u>.

27.     The Class is so numerous that joinder of all members is impractical. The number of Class members is at least 1,000 people, including 680 children.

28. There are common questions of law and fact that affect the rights of each member of the Class, and the types of relief sought are common to the entire Class. The same conduct by each Defendant has injured each member of the Class. The Class members are all impacted by lead and arsenic contamination in their neighborhood caused by Defendants, which is the predominant question in this matter. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

29. Plaintiffs' claims are typical of the claims of the Class. All are based upon the same factual and legal theories. It is the same conduct by each Defendant that has injured each member of the Class.

30. The principal issue in this matter involves Defendants' conduct in disposing and releasing lead and arsenic which impacts numerous properties occupied by residents in the Class Area. The prosecution of separate actions by individual members of the Class would potentially result in inconsistent or varying adjudications with respect to individual members of the Class. Prosecution of separate actions would establish incompatible standards of conduct for Defendants, which would be dispositive of the interests of other members not parties to the adjudications, and substantially impair or impede other members' ability to protect their interests.

31. Plaintiffs will fairly and adequately represent and protect the interests of the Class.

32. Plaintiffs have retained competent and experienced counsel to represent the Class.

## COUNT I
### (CERCLA Cost Recovery, 42 U.S.C. § 9607(a))

33. Plaintiffs, individually and on behalf of the Class defined herein, repeat and reallege and incorporate by reference paragraphs 1 through 32 as paragraph 33 of this Count I, as though fully set forth herein.

34. Each Defendant is a "person" as defined by § 9601(21) of CERCLA, 42 U.S.C. § 9601(21).

35. Each of the Defendants were and/or continue to be "owners" and/or "operators" of a "facility" and a portion of a "facility," within the meaning of §§ 9601(9), 9601(20) and 9607(a) of CERCLA, 42 U.S.C. §§ 9601(9), 9601(20), 9607(a). The "facilities" include each of Defendant's properties and the EPA "U.S. Smelter and Lead Refinery Superfund" site, which includes the Class Area and West Calumet.

36. The substances, including arsenic and lead, used or stored at each of the Defendant's facilities were and are "hazardous substances," within the meaning of § 9601(14) of CERCLA, 42 U.S.C. § 9601(14).

37. There have been "releases" or "threatened releases" of hazardous substances into the environment at each of Defendant's facilities and into the Class Area, which is also a facility, and part of the EPA "U.S. Smelter and Lead Refinery Superfund site," within the meaning of §§ 9601(22) and 9607(a) of CERCLA, 42 U.S.C. §§ 9601(22) and 9607(a). The hazardous substances released include, but are not limited to, arsenic and lead.

38. Defendants' releases have been dumped, or migrated towards and into Plaintiffs' properties and into the surrounding neighborhood and the Class Area. Plaintiffs have not contaminated any facility in any way.

39. Defendant ARC is a person who at the time of disposal of hazardous substances owned and/or operated a facility at which hazardous substances were disposed and from which there were releases of hazardous substances, or threatened releases of hazardous substances.

40. Defendant DuPont is: (a) an owner or operator of a facility from which there were releases of hazardous substances, or threatened releases of hazardous substances, and (b) a persons who at the time of disposal of hazardous substances owned and/or operated a facility at which hazardous substances were disposed and form which there were releases of hazardous substances, or threatened releases of hazardous substances.

41. As a result of the releases or threatened releases of hazardous substances, Plaintiffs and the Class have incurred and continue to incur "response" costs within the meaning of §§ 9601(23)-(25) of CERCLA, 42 U.S.C. §§ 9601(23)-(25), including, but not limited to, preliminary investigations of the contamination of Plaintiffs' and the Class' properties, and temporary housing and relocation costs.  All such costs are necessary costs of response, and, to the extent required, consistent with the National Contingency Plan.  Plaintiffs and the Class will continue to incur such response costs in the future.  Plaintiffs and the Class are entitled to full reimbursement from Defendants for all such costs, pursuant to § 9607(a) of CERCLA, 42 U.S.C. § 9607(a).

## COUNT II
**(Nuisance)**

42. Plaintiffs, individually and on behalf of the Class defined herein, repeat, reallege and incorporate by reference paragraphs 1 through 41 as paragraph 42 of this Count II, as though fully set forth herein.

43. The contamination of the soils with lead and arsenic at, in, on or beneath Plaintiffs' and Class Area properties, and residential properties adjacent to and in the area of said properties occurred and persists because of all Defendants' acts and omissions including, but not limited to, their operation and maintenance of their facilities and equipment; their handling, storage, use and disposal of hazardous substances; and/or their failure to promptly and effectively address such contamination to prevent further migration of the contaminants.

44. Defendants' contamination of the soils and their failure to address such contamination constitutes an unreasonable, unwarranted and unlawful use of the properties and substantially interferes with Plaintiffs' and the Class' reasonable use, development and enjoyment of their properties.  For example, Plaintiffs and the Class, including the children, cannot play on their properties outside of their homes, cannot use their land for things such as gardening, must constantly wash themselves, and their shoes, clothing and toys, and cannot use the public parks in the Class Area.

45. As alleged above, Plaintiffs and the Class have incurred substantial damage as a result of Defendants' creation and maintenance of such contamination, constituting a nuisance.

## COUNT III
**(Negligence)**

46. Plaintiffs, individually and on behalf of the Class defined herein, repeat and reallege and incorporate by reference paragraphs 1 through 45 as paragraph 46 of this Count III, as though fully set forth herein.

47. Defendants had a duty to Plaintiffs and the Class not to permit or allow hazardous substances at the properties to leave or be released at their facilities.  Defendants also had a duty to promptly respond to any releases of contaminants in a manner which would prevent further

migration of the contaminants, and to warn Plaintiffs of the release or threatened release of lead and arsenic into or towards the soil used by Plaintiffs. The facilities, and lead and arsenic generated therefrom, were within Defendants' exclusive control.

48. Defendants have breached these duties by their negligent acts and omissions in operating and maintaining their facilities; their handling, storage, use and disposal of hazardous substances; their failure to promptly and effectively address such contamination to prevent further migration of the contaminants; and their failure to warn Plaintiffs and the Class of the release or threatened release.

49. If ordinary care was used, lead and arsenic would not be released from Defendants' facilities into the soil in the Class Area, or would have been remediated soon after it was released.

50. The release of lead and arsenic and/or failure to remediate the lead and arsenic would not have occurred but for the negligent acts or omissions of the Defendants, as this ordinarily does not happen in the absence of negligence.

51. As a direct or proximate result of these negligent acts or omissions, the Plaintiffs and the Class have suffered substantial damages. These damages were not caused by any voluntary act or neglect on the part of Plaintiffs or the Class.

## **Relief Requested**

WHEREFORE, Plaintiffs request that this Court enter judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally, and pray that the Court:

A. certify Plaintiffs' action as a Class action on behalf of all others similarly situated, appoint Plaintiffs as the Class representatives, and appoint Plaintiffs' counsel as counsel for the Class;

B. enter judgment against Defendants, jointly and severally, for all response costs incurred by Plaintiffs and others in the Class Area under CERCLA, including, but not limited to, costs of investigation and temporary relocation, and declare that Defendants are jointly and severally liable for all response costs to be incurred by Plaintiffs and others in the Class area under CERCLA;

C. award damages incurred by Plaintiffs and others in the Class Area against Defendants, jointly and severally, under Counts II through III for all damages, including, but not limited to, out of pocket damages, temporary and permanent relocation costs, discomfort, aggravation and annoyance;

D. order expedited discovery to determine the nature, extent and full scope of the contamination;

E. award Plaintiffs and the Class their attorney's fees and costs of suit, and such other and further relief as the Court deems just and proper.

### Jury Demand

Plaintiffs request trial by jury on all issues so triable.

Respectfully submitted,

/s/ JAMES D. BRUSSLAN

JAMES D. BRUSSLAN
JASON B. HIRSH
LEVENFELD PEARLSTEIN, LLC
2 N. LaSalle Street, Suite 1300
Chicago, Illinois 60602
(312) 476-7570
(312) 346-8434 (fax)
jbrusslan@lplegal.com
jhirsh@lplegal.com

> THOMAS A. ZIMMERMAN, JR.
> SHARON A. HARRIS
> (*pro hac vice anticipated*)
> ZIMMERMAN LAW OFFICES, P.C.
> 77 W. Washington Street, Suite 1220
> Chicago, Illinois 60602
> (312) 440-0020
> (312) 440-4180 (fax)
> *tom@attorneyzim.com*
> *sharon@attorneyzim.com*

Counsel for the Plaintiffs and Putative Class